UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RACHELLE LAKIA JAMES                    DOCKET NO. 6:11-cv-00465

VERSUS                                  JUDGE MELANÇON

MICHAEL J. ASTRUE,                      MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION


## REPORT  AND  RECOMMENDATION


Before the court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the Commissioner's decision be REVERSED and
REMANDED.


## BACKGROUND AND THE COMMISSIONER'S FINDINGS

The claimant in this case is Rachelle Lakia James, sometimes referred to in the
record as Rachelle Harris.  On February 20, 2008, Ms. James's mother applied for
Supplemental Security Income benefits for her daughter, alleging a disability onset
date of February 1, 1998.[1]  Ms. James was born on November 4, 1992.[2]  At the time

---

[1]      Rec. Doc. 7-6 at 2.

[2]      Rec. Doc. 7-3 at 27; Rec. Doc. 7-6 at 2.

of the application, she was 15 years old.  She reached the age of eighteen in 2010, and, at the time of this report, she is nineteen years of age.  Therefore, the benefits at issue here are SSI benefits from February 20, 2008 through November 4, 2010.

In the application for Social Security benefits, it was alleged that Ms. James became disabled on February 1, 1998.  She claimed to be disabled due to dyslexia, learning problems, and bipolar disorder.[3]

On May 7, 2008, the Commissioner initially denied Ms. James's application.[4] A hearing was requested, and it was held on June 29, 2009.[5]  On July 31, 2009, the administrative law judge ("ALJ") issued an unfavorable decision.[6]  Review by the Appeals Council was sought, but on January 24, 2011 the Appeals Council denied review,[7] making the ALJ's decision the Commissioner's final decision in this matter. Ms. James filed this lawsuit, seeking review of the Commissioner's decision, on March 22, 2011,[8] after she had reached her eighteenth birthday.

---

[3]      Rec. Doc. 7-5 at 2.

[4]      Rec. Doc. 7-4 at 2; Rec. Doc. 7-5 at 2-5.

[5]      Rec. Doc. 7-3 at 23-70 (hearing transcript).

[6]      Rec. Doc. 7-3 at 12-22.

[7]      Rec. Doc. 7-3 at 2.

[8]      Rec. Doc. 1.

Ms. James is originally from New Orleans, Louisiana.  Her mother first noticed her severe mood swings when she was five years old.[9]  In New Orleans, she was treated for dyslexia at LSU Mental Health, and she repeated two grades in school.[10] Her behavior was so inappropriate at school that her mother was required to sit beside her in class for a year and one-half until the school board assigned someone else to do so.[11]  Unfortunately, her school records from New Orleans were destroyed in Hurricane Katrina.[12]

After Katrina, the claimant's family relocated.  According to her mother, Ms. James's behavior deteriorated after the move, and Ms. James attempted suicide.[13]  On one occasion, she locked herself in her room with a butcher knife, and her mother was forced to call the police to come to the home, pick the lock, and take her into custody to disarm her.[14]  At the hearing, Ms. James's mother explained that Ms. James has

---

[9]       Rec. Doc. 7-3 at 51.

[10]      Rec. Doc. 7-3 at 31, 34.

[11]      Rec. Doc. 7-3 at 35.

[12]      Rec. Doc. 7-3 at 36.

[13]      Rec. Doc. 7-3 at 31-32.

[14]      Rec. Doc. 7-3 at 32-34.

daily mood swings and crying spells[15] as well as a problem with authority.[16]  Her mother also stated that one of her medications, Adderall, makes Ms. James sit still for three to four hours "like a zombie."[17]  Ms. James testified that her medication makes her sleepy and causes her to sleep in class.[18]

The record contains evidence that Ms. James attended school for three years at Breaux Bridge Junior High School in Breaux Bridge, St. Martin Parish, Louisiana, and then attended one year at Scott Middle School in Scott, Lafayette Parish, Louisiana.  At both schools, Ms. James had behavior problems, and at both schools she was again retained.  In all, she has now been retained four times,[19] having failed fourth, fifth, seventh, and eighth grades.[20]

In her testimony at the hearing, Ms. James stated that she has a lot of problems at school,[21] does not know her multiplication tables or how to do math,[22] is too shy

---

[15]     Rec. Doc. 7-3 at 43.

[16]     Rec. Doc. 7-3 at 44.

[17]     Rec. Doc. 7-3 at 48.

[18]     Rec. Doc. 7-3 at 62.

[19]     Rec. Doc. 7-3 at 56.

[20]     Rec. Doc. 7-8 at 32, 35.

[21]     Rec. Doc. 7-3 at 55.

[22]     Rec. Doc. 7-3 at 55.

or too ashamed to ask for help at school,[23] and was suspended several times because "[w]hen people tell me things I get mad."[24]  She said that she has only one friend in Lafayette Parish,[25] and that she does not know where many of her friends from New Orleans are now living.[26]

Ms. James attended sixth grade at Breaux Bridge Junior High School during the 2005 - 2006 school year.  In the spring of 2006, when she was 13 years old in the sixth grade, Ms. James took the iLEAP test,[27] and scored unsatisfactory (the lowest category) in math and social studies and approaching basic (the second lowest category) in language arts and science.[28]  She also took the Iowa Test of Basic Skills

---

[23]     Rec. Doc. 7-3 at 57.

[24]     Rec. Doc. 7-3 at 58.

[25]     Rec. Doc. 7-3 at 61.

[26]     Rec. Doc. 7-3 at 55.

[27]     All fourth and eighth grade students in Louisiana take the Louisiana Educational Assessment Program ("LEAP") test.  Students in sixth and seventh grade take the iLEAP test.  The tests measure knowledge and skills in English Language Arts, math, science, and social studies.  The five achievement levels a student can earn on the tests are advanced, mastery, basic, approaching basic, and unsatisfactory.  Fourth and eighth students must score "basic" or above in either English or math and "approaching basic" or above in the other subject to advance to the next grade. http://www.doe.state.la.us/testing/.

[28]     Rec. Doc. 7-7 at 11.

and scored at the 17th percentile,[29] which means that she scored better than only 17% of students, while 83% of students scored better than she did.

Ms. James attended seventh grade at Breaux Bridge Junior High School during the 2006 - 2007 school year.  She was suspended from classes for a day in early October 2006 for fighting, she was then suspended for four additional days shortly thereafter for being disruptive, disrespectful, and willfully disobedient.[30]  In the spring of 2007, she was again suspended for willful disobedience, treating authority figures with disrespect, disturbing class, and violating school rules.[31]  In the spring of 2007, when she was fourteen years old in the seventh grade at Breaux Bridge Junior High School, she took the iLEAP test and scored an unsatisfactory in all four subject areas.[32]  Her report card for the 2006 - 2007 school year indicates that she made an F in math every six weeks.[33]  She was not promoted to the eighth grade but was, instead, retained in the seventh grade.[34]

---

[29]     Rec. Doc. 7-7 at 91.

[30]     Rec. Doc. 7-7 at 46-55.

[31]     Rec. Doc. 7-7 at 69.

[32]     Rec. Doc. 7-7 at 11.

[33]     Rec. Doc. 7-7 at 45.

[34]     Rec. Doc. 7-7 at 45.

Ms. James again attended seventh grade at Breaux Bridge Junior High School during the 2007 - 2008 school year.  In October 2007, when Ms. James was almost 15 years old and attending seventh grade at Breaux Bridge Junior High School, she was given accommodations through a Section 504 Individual Accommodation Plan because of her ADHD and her math deficit.[35]  She was given alternative assignments, additional time to complete assignments, and was permitted to use a calculator in math class.  These accommodations were not applicable only to her math class; they also applied to reading, composition, English, spelling, science, and social studies.

The record indicates that, during the 2007 - 2008 school year, she was suspended from the bus for using foul language,[36] and suspended from classes for five days due to fighting and disrespecting authority figures.[37]  She was then suspended for an additional four days because of six separate infractions on four disparate dates in the spring of 2008.[38]  These infractions again involved her being disrespectful to teachers.  Her mother also testified about an incident in which Ms. James cut a fellow

---

[35]     Rec. Doc. 7-7 at 8-9.

[36]     Rec. Doc. 7-7 at 7.

[37]     Rec. Doc. 7-7 at 3-7.

[38]     Rec. Doc. 7-7 at 19.

student with a ruler.[39]  The attendance record also indicates that she was tardy on numerous occasions during that school year.[40]

In January 2008, six of Ms. James's teachers at Breaux Bridge Junior High School filled out NICHQ Vanderbilt Assessment Scale questionnaires.[41]  Three teachers reported that Ms. James is often easily distracted by extraneous stimuli.  Two teachers reported that she often has difficulty maintaining attention to tasks or activities; does not follow through on instructions and fails to finish schoolwork; often leaves her classroom seat when expected to remain seated; often does not seem to listen when spoken to directly; often has difficulty organizing tasks and activities; often is angry or resentful; and often loses her temper.  One teacher reported that Ms. James very often loses her temper and very often defies or refuses to comply with an adult's requests or rules, and very often blurts out answers before questions have been completed.  One teacher reported that Ms. James often talks excessively; and another teacher reported that Ms. James very often talks excessively.

---

[39]      Rec. Doc. 7-3 at 40.

[40]      Rec. Doc. 7-7 at 3.

[41]      Rec. Doc. 7-7 at 62-67.  Some of the questionnaires are mistakenly dated January 2007.   These forms are used by clinicians to assist in diagnosing ADHD. http://www.nichq.org/toolkits_publications/complete_adhd/01ADHD%20Introduction.pdf.

One of the teachers filling out the questionnaire was Coach Jim Durio, Ms. James's seventh grade physical education teacher.[42]  Although his questionnaire appears to be the one most critical of Ms. James's behavior in class, he also evaluated Ms. James's functionality in March 2008 and reported that he has observed no problems in Ms. James's ability to acquire and use knowledge, no problem in her ability to attend and complete tasks, but a serious problem in her ability to interact and relate with others.[43]

Ms. James attended eighth grade at Scott Middle School during the 2008 - 2009 school year.  In December 2008, she was suspended for being argumentative with the principal.[44]  A March 2009 behavior report indicates that, among other infractions, she told a teacher to shut up.[45]  In the spring of 2009, when she was 16 years old in the eighth grade at Scott Middle School, she took the LEAP test.  She

---

[42]      Rec. Doc. 7-7 at 66.

[43]      Rec. Doc. 7-7 at 12-18.  Although the date on this form appears to read "3/21/02," it must actually have been filled out on March 21, 2008.

[44]      Rec. Doc. 7-7 at 124.

[45]      Rec. Doc. 7-7 at 127.

scored approaching basic in language arts and unsatisfactory in the other three categories.[46]  She failed the eighth grade.[47]

According to Ms. James's mother, the behavior problems worsened after the family moved to Lafayette Parish.[48]  Ms. James has severe mood swings on a daily basis.[49]  Ms. James admits that she fights with her younger sister, is sometimes disrespectful to her grandmother,[50] and has an anger problem.[51]  She takes medications for ADHD.[52]  Because Ms. James is so much older than her classmates, the school system wants her to go into an adult education program either through Job Corps or to an alternative program in the Lafayette Parish schools rather than continuing in middle school classes.[53]

Ms. James's mother testified at the hearing that St. Martin Parish school officials recommended that Ms. James receive counseling at St. Martin Mental

---

[46]     Rec. Doc. 7-7 at 188-189.

[47]     Rec. Doc. 7-7 at 179.

[48]     Rec. Doc. 7-3 at 40.

[49]     Rec. Doc. 7-3 at 43.

[50]     Rec. Doc. 7-3 at 60-61.

[51]     Rec. Doc. 7-8 at 7.

[52]     Rec. Doc. 7-3 at 49; Rec. Doc. 7-7 at 178.

[53]     Rec. Doc. 7-3 at 50.

-10-

Health.[54]  The record indicates that Ms. James treated at St. Martin Parish Community Health Center from March 2008 through August 2008,[55] where she was diagnosed with a mood disorder – not otherwise specified – and ADHD  – rule out bipolar disorder.[56]  In March 2008, she was assigned a Global Assessment of Functioning ("GAF") score of 50.[57]  A GAF score of 50 is indicative of "**serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."[58]  She was initially prescribed Trileptal, Risperdal, and Adderall. Lamictal was soon added.[59]  At the time of the hearing, Ms. James was taking four medications for ADHD – Adderall, Risperdal, Trileptal, and Excarbazepine.[60]

On April 29, 2008, Ms. James underwent a consultative examination by Alfred E. Buxton, Ph.D., a psychologist.[61]  Dr. Buxton reviewed a very limited number of

---

[54]     Rec. Doc. 7-3 at 37.

[55]     Rec. Doc. 7-8 at 20-28.

[56]     Rec. Doc. 7-8 at 22.

[57]     Rec. Doc. 7-8 at 22.

[58]     American Psychiatric Association:  *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, p. 32 (emphasis and capitalization in original) ("DSM-IV").

[59]     Rec. Doc. 7-8 at 26.

[60]     Rec. Doc. 7-7 at 178.

[61]     Rec. Doc. 7-8 at 6-8.

documents:  Ms. James's report card for first five six weeks periods of the 2007 - 2008 school year; a school attendance report for that same school year, a school discipline record for that school year, and a Social Security form.[62]  Dr. Buxton interviewed Ms. James and her mother, and he administered the Wechsler Intelligence Scale for Children-IV.  Ms. James's mother told him that Ms. James's energy level is poor, and she has chronic dysphoria.[63]  Ms. James told him that she has infrequent passive suicidal ideation as well as occasional assaultive ideation.  At that time, Ms. James was taking three psychoactive medications.  Dr. Buxton noted that Ms. James's mood was somber, her affect was mood congruent, impulse control was fair, judgment good, reasoning fair, and insight fair to poor.  He determined that she has borderline subaverage general intellect; appears to have a chronic dysthymic disorder with mild to moderate impairment and a fair prognosis; oppositional defiant disorder with moderate impairment and fair prognosis; and an academic problem secondary to being a slow learner or otherwise handicapped student with emotional and

_____

[62]    Rec. Doc. 7-8 at 7.  The Social Security form noted in Dr. Buxton's report as being dated 2002 is likely the function evaluation filled out by Coach Jimmy Durio, Ms. James's seventh grade physical education teacher, on March 21, 2008.  The date on that form appears to read "02" but it must have been filled out in 2008.  The form number on the function evaluation is the same as that referenced by Dr. Buxton.

[63]    Rec. Doc. 7-8 at 7.  The term "dysphoria" can be defined as a "sudden and transient state of mind, such as feelings of sadness, sorrow[,] and anguish.  It is a psychological condition accompanied by depression, melancholy[,] and pessimism."  http://www.dysphoria.info/.

-12-

behavioral disturbance.  He recommended outpatient mental health intervention, including both counseling and continued psychoactive medication as well as additional services through the school system.  He opined that Ms. James's adaptive daily living skills are subaverage but within acceptable limits for her age.  This evaluation was performed a full year prior to the hearing before the ALJ.

In August 2009, after the ALJ's ruling was issued, Ms. James was evaluated by a social worker at the J.H. Tyler Mental Health Center in Lafayette, Louisiana.[64] The focus of treatment was to address mood challenges, assist with the development of an educational plan, and address self-esteem challenges.

## ASSIGNMENT OF ERRORS

Ms. James claims that the Commissioner's ruling is erroneous because (1) the ALJ failed to properly evaluate all of the relevant evidence under the whole child standard; (2) the ALJ failed to properly evaluate whether Ms. James's functional equivalence in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; and (3) the ALJ failed to give proper weight to the testimony of Ms. James's mother, Lakeeisha James.  In sum, Ms. James argues that the ALJ's finding regarding functional equivalence is not

---

[64]        Rec. Doc. 7-8 at 30-35.

supported by substantial evidence and was reached through the application of an improper legal standard.

## STANDARD OF REVIEW

This Court's is limited to determining whether the Commissioner's decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[65]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[66]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[67]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[68]  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must

---

[65]     42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[66]     *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[67]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[68]     *Boyd v. Apfel,* 239 F.3d at 704.

be scrutinized as a whole.[69]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[70]  A claimant has the burden of proving his disability.[71]

A person under the age of eighteen is considered to be disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[72]

A three-step evaluative process is utilized to determine whether a person under the age of eighteen is disabled.[73]  At step one, it must be determined whether the claimant is engaging in substantial gainful activity.  A child claimant who is engaging in substantial gainful activity will be found not disabled regardless of his medical condition, age, education, or work experience.[74]

---

[69]     *Singletary v. Bowen*, 798 F.2d at 823.

[70]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[71]     See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

[72]     42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.

[73]     20 C.F.R. § 416.924; *Lopez v. Barnhart*, 176 Fed. App'x 618, 619 (5th Cir. 2006).

[74]     20 C.F.R. § 416.924(b).

At step two, it must be determined whether the claimant has a medically determinable severe impairment or a combination of impairments that is severe.  A child found to have a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations will be found to be not disabled.[75]

At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing or that functionally equals a listing.[76]  When the impairments do not meet or equal a listed impairment, the Commissioner will evaluate the functional limitations caused by the child's impairments to determine whether they are disabling.[77]

An impairment is functionally equivalent to a listing when it results in a marked limitation in two domains of functioning or in an extreme limitation in one domain.[78]  The domains that the ALJ must analyze are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.[79]  A marked limitation seriously interferes with the

---

[75]     20 C.F.R. § 416.924(c).

[76]     20 C.F.R. § 416.972.

[77]     20 C.F.R. § 416.926a.

[78]     20 C.F.R. § 416.926a(a).

[79]     20 C.F.R. § 416.926a(b)(1).

claimant's ability to independently initiate, sustain, or complete activities,[80] while an extreme limitation interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities."[81]

## DISCUSSION

In his ruling, the ALJ followed the required three-step sequential process for determining whether Ms. James is disabled.  At step one, the ALJ found that Ms. James has not engaged in substantial gainful activity at any relevant time.[82]  This finding is supported by the record, which contains no evidence that Ms. James has engaged in significant physical or mental activities for pay or profit[83] at any time.

At step two, the ALJ found that Ms. James has two severe impairments:  mixed mood disorder and attention deficit hyperactivity disorder.[84]  This is supported by the evidence in the record, which establishes that Ms. James was diagnosed with a mood

---

[80]     20 C.F.R. § 416.926a(e)(2)(I).

[81]     20 C.F.R. § 416.926a(e)(3)(I).

[82]     Rec. Doc. 7-3 at 15.

[83]     20 C.F.R. § 416.972.

[84]     Rec. Doc. 7-3 at 15.

-17-

disorder and ADHD.[85]   Ms. James was also diagnosed with oppositional defiant disorder.  Implicitly, the ALJ found that disorder not to be severe.

At step three, the ALJ found that Ms. James does not have an impairment or combination of impairments that meets or medically equals a listed impairment or that functionally equals a listing impairment.[86]  The ALJ did not identify the listings that he considered or explain how Ms. James fails to satisfy the criteria of any particular listing.  However, Ms. James does not argue that she meets or medically equals a listing, but she does argue that the ALJ erred in finding that she does not functionally satisfy a listing.  Presumably, Ms. James is referencing either Listing 112.11, the listing for attention deficit hyperactivity disorder, or Listing 12.04, the listing for affective disorders, although the listings for organic mental disorders and personality disorders might also be relevant.

In particular, Ms. James argues that the ALJ failed to properly evaluate whether her impairments satisfy the functional equivalence requirements in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  The undersigned agrees.

---

[85]      Rec. Doc. 7-8 at 22.

[86]      Rec. Doc. 7-3 at 15.

The ALJ concluded that Ms. James has less than a marked limitation in the domain of acquiring and using information.  This conclusion relied upon selective information from the record without adequate explanation.  In reaching this conclusion, the ALJ relied on the consultative examiner's testing that established Ms. James as having subaverage intellect but adaptive daily living skills within acceptable limits of calendar age expectancy and also on Ms. James's physical education teacher's report that she has no problems in this domain.[87]  Although the ALJ noted that Ms. James failed the 2009 LEAP test and has failed the fourth, fifth, seventh, and eighth grades, he did not find this indicative of a marked or extreme difficulty in acquiring and using information.  The ALJ's analysis ignored the fact that Ms. James was 16 years old in the eighth grade; scored only at the 17th percentile on the Iowa Test; failed math every six weeks in her first seventh grade year; scored poorly on every iLEAP and LEAP test that is documented in the file; and personally reported that she cannot do math.  "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[88]  But the only

---

[87]      Rec. Doc. 7-7 at 12.

[88]      *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  See, also, *Stephens v. Barnhart*, 174 Fed. App'x 232, 233 (5th Cir. 2006).

explanation for the ALJ's conclusion is that he selected the information from the record that supports his position and ignored all contrary evidence.  This was error.

The ALJ also found that Ms. James has less than a marked limitation in the domain of attending and completing tasks.  Again, this conclusion was based upon certain items of evidence selected from the record without adequate explanation.  The ALJ seems to rely on Coach Durio's questionnaire that indicated Ms. James has no problems in this domain.[89]  At the same time, however, the ALJ did not refer to – and apparently gave no weight to – Coach Durio's responses on the NICHQ Vanderbilt Assessment Scale, which reported that Ms. James often does not follow through on instructions and fails to finish her schoolwork and consequently are inconsistent with his other report.[90]  Similarly, the ALJ's conclusion totally ignores the other teachers' evaluations of Ms. James's classroom conduct.[91]   The ALJ again seems to have selected only that evidence that supported his conclusion and ignored the other evidence in the record.  This was error.

Finally, the ALJ found that Ms. James has less than a marked limitation in the domain of interacting and relating with others.  Again, it appears that he selected

---

[89]     Rec. Doc. 7-7 at 13.

[90]     Rec. Doc. 7-7 at 66.

[91]     Rec. Doc. 7-7 at 12-18.

evidence from the record to support this conclusion and ignored the evidence that does not.  This time he made no reference to Coach Durio's report, which indicates that Ms. James has a problem in this domain and, more particularly, has a serious problem on a weekly basis with regard to respecting and/or obeying adults in authority.[92]

The ALJ's analysis of this domain lists various items from the evidence but does not explain why the listed items do or do not support his conclusion.  Furthermore, he did not explain why he chose to mention certain evidence but did not mention other evidence.  Despite Ms. James's testimony that she has only one local friend, the ALJ found that "[s]he has friends."  He noted that her mother reported to the consultative examiner that Ms. James "has adequate social contacts," but he did not note that her mother testified that she had to call the police to take her daughter into custody because she was locked in her room with a butcher knife.  Similarly, he mentioned none of the mother's testimony regarding behavior problems at home, including fighting with her sister and disrespecting her grandmother.  The ALJ noted that the record establishes that Ms. James has been suspended from school for various serious reasons but he under-counted the number of suspensions and infractions.  He noted that the consultative examiner reported both suicidal and assault ideation by

---

[92]     Rec. Doc. 7-7 at 14.

Ms. James, but then apparently discounted that evidence because she handled herself well at the hearing.  With regard to this domain, the ALJ seems to have merely listed several relevant evidentiary items without explaining why he decided to mention only that evidence or why this particular evidence supports his finding.

In short, the ALJ did not explain the evidentiary basis for his finding – he merely listed some items of evidence that relate to this domain but did not explain how or why the scales tipped in favor of his finding.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[93]  In this case, however, the ALJ did not weigh or otherwise explain his basis for resolving the conflicting record evidence concerning this domain.  The ALJ's failure to adequately discuss the evidence and explain the basis for his finding is error.

The undersigned finds that the ALJ erred in analyzing whether Ms. James's impairments functionally meet a listing.  The ALJ failed to consider all of the evidence in the record and failed to explain the evidentiary basis for his findings.  With regard to all three domains, the ALJ cited Coach Durio's opinions only when they supported his own conclusions.  The ALJ improperly disregarded evidence of

---

[93]     *Williams v. Astrue*, No. 09–0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.2007), which in turn cites 42 U.S.C. § 405(b)(1).

record that might have changed his conclusions.  Had the ALJ found that Ms. James had an extreme limitation in one domain or a marked limitation in two domains, he also would have found her disabled.  Accordingly, the ALJ's findings are not supported by substantial evidence, and the undersigned recommends that this matter be remanded, with instructions for the Commissioner to obtain Ms. James's updated medical,[94] mental health, and school records, for a full and complete review at the third step of the requisite analysis.

Having found that this matter should be remanded, the undersigned pretermits discussion of the claimant's two other alleged errors relating to the whole child standard and to the weight given by the ALJ to Ms. James's mother's testimony.


CONCLUSION AND RECOMMENDATION

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner erred in reaching the final decision in this matter.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the Commissioner's decision be REVERSED and REMANDED.  More particularly, it

---

[94]      The undersigned notes that the ALJ complained of a paucity of medical information in the record.  Rec. Doc. 7-3 at 16.  However, Ms. James was not represented by counsel when the record was compiled, placing the responsibility for developing the record squarely on the ALJ, who did not follow up with Ms. James's treating physician after the initial request for record (Rec. Doc. 7-8 at 18) or request updated records even though a year elapsed between the requests for medical records and the hearing (Rec. Doc. 7-8 at 18-19).

is the undersigned's recommendation that this matter be remanded for consideration of updated medical, mental health, and school records as well as an updated consultative examination of the claimant or an evaluation by claimant's treating physician and a determination of whether Ms. James's impairments meet, medically equal, or functionally equal the listings for ADHD, mood disorders, organic mental disorders, or personality disorders.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

      Signed at Lafayette, Louisiana, this 13th day of April 2012.

                              _____

                              PATRICK J. HANNA
                              UNITED STATES MAGISTRATE JUDGE

```
Copy sent:  TLM
On:   4-13-2012
By:  MBD
```

-25-